IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Richard Stogsdill, Nancy Stogsdill, Mother of Richard Stogsdill, Robert Levin, and Mary Self, Mother of Robert Levin, | C/A No. 3:12-cv-0007-JFA |
| Plaintiffs, | |
| vs. | **ORDER** |
| Anthony Keck and the South Carolina Department of Health and Human Services, | |
| Defendants. | |

## I.    INTRODUCTION

This case arises out of the reduction in benefits provided to two Medicaid-eligible individuals and seeks to challenge the policies and procedures in the operation of two Medicaid programs. Richard Stogsdill ("Stogsdill"), Nancy Stogsdill, Mother of Richard Stogsdill, Robert Levin ("Levin"), and Mary Self, Mother of Robert Levin (collectively "Plaintiffs") allege violations of statutory and constitutional due process, violations of the S.C. Administrative Procedures Act, violations of the Americans with Disabilities Act, violations of Section 504 of the Rehabilitation Act, and violations of 42 U.S.C. §§ 1983 and 1985 (Civil Rights) against Anthony Keck ("Keck") and the South Carolina Department of Health and Human Services ("SDHHS") (collectively "Defendants").

1

## II.    BACKGROUND FACTS

Plaintiffs are Medicaid-eligible disabled adults who have been receiving services under either the South Carolina Intellectually Disabled and Related Disabilities waiver or the Head and Spinal Cord Injury waiver.  Waivers are mechanisms within the Medicaid Program that allow participants to receive a mix of services through the South Carolina Department of Disabilities and Special Needs ("SCDDSN").   The waivers allow certain generic requirements of the Medicaid program to be "waived" so states can provide services to Medicaid-eligible participants in ways not allowed under the regular Medicaid program.  SCDHHS is the single agency that administers Medicaid in South Carolina. SCDHHS contracts with SCDDSN to administer the day-to-day operations of the waiver programs.

On January 1, 2010, the five (5) year renewal of the waivers, as approved by the Centers for Medicare and Medicaid Services ("CMS") went into effect. The renewed waivers included a cap or limit on some services and completely excluded others.  These limits and exclusions form the basis of Plaintiffs' lawsuit.

### A.  Richard Stogsdill

Prior to the January 1, 2010, waiver changes, Stogsdill was receiving 96 hours of Personal Care Aide and Companion services per week. He also received approximately 36 hours per week of Respite Care.  Personal Aide II services consist of hands-on care that a participant requires for daily living, such as bathing, dressing, and toileting. Adult Companion services are similar, except they include an aspect of community integration.  Respite Care includes a range of services designed to provide care for the participant when the normal caregiver is absent or needs relief.  The January 1, 2010, waiver capped any combination of Personal Aide II services and Adult Companion services at 28 hours per week.  Respite Care services under the January 1,

2010, waiver is typically 68 hours per month, but can be increased up to 240 hours per month under certain circumstances.

Effective January 1, 2010, Stogsdill's Personal Aide II services and Adult Companion Services were reduced to 28 hours per week combined. Respite Care services were limited to 68 hours per month; however, an increase of 172 hours per month of Respite Care was granted following the reductions at the request of Stogsdilll's service coordinator. Stogsdill's Occupational and Speech Therapies were discontinued.[1]

On Febraury 13, 2009, after Stogsdill's services were reduced, he sought reconsideration by SCDDSN. This request was subsequently denied on March 3, 2009. On April 1, 2009, Stogsdill then appealed the SCDDSN determination to the Appeals Division. The Appeals Division affirmed the reductions on September 14, 2010. This decision was then appealed to the South Carolina Administrative Law Court ("ALC") on October 20. 2010.[2] While the appeal was pending at the ALC, the current suit was filed in Federal Court. On March 13, 2013, the ALC issued an order upholding the decision rendered by SCDDSN.[3] Subsequently, Stogsdill appealed the ALC decision to the South Carolina Court of Appeals. The Court of Appeals heard oral argument in March of 2014, but at the time of briefing of these motions, had not rendered a decision.

---

[1] These therapies may still be available to participants through the Medicaid Sate Plan. (ECF No. 107-2).
[2] The South Carolina Administrative Law Court has been statutorily appointed to review appellate decisions from the South Carolina Department of Health and Human Services. S.C. Code. Ann. § 1-23-600(D).
[3] The ALC made the following findings in its Order: (1) The service coordinator's request was within the limits created by the new waiver, and the substantial evidence supports the finding that the changes in the waiver were lawfully made; (2) Adequate Due Process was afforded to Stogsdill; (3) The previous administrative decision was carried out while conforming with changes in the waiver; and (4) The state's responsibility under *Olmstead* is not boundless, such that if the accommodation would fundamentally alter the State's program, the State does not have to make the accommodation. (ECF No. 102-2).

However, prior to this Court's hearing on the parties' cross motions, a judgment was entered by the South Carolina Court of Appeals[4] on several issues pending before this Court. The Court of Appeals ruling (1) affirmed that approval by state regulation was not required to give the waiver's provisions the force and effect of law, (2) affirmed Stogsdill fully exercised his opportunity for a hearing and judicial review, and thus, his due process rights were not violated, (3) reversed the Administrative Law Court's conclusion that Stogsdill's risk of institutionalization was speculative, and (4) under *Pashby* found SCDHHS failed to establish a fundamental alteration defense. The case was "remanded for consideration of the appropriate services to be provided without the restrictions of the 2010 waiver." *Id.* at *7. The Court of Appeals has denied both parties' petitions for rehearing. However, according to representations made by counsel at the hearing on this matter, the parties may still seek appellate review of the Court of Appeals' decision by the South Carolina Supreme Court.

### B. Robert Levin

Levin receives services under the HASCI waiver. Effective January 1, 2010, Levin's Attendant Care/Personal Services were reduced from 56 hours per week to 49 hours per week. Levin is authorized for 30 hours per year of back up emergency attendant care for use through an agency, should one of his attendants not be available to provide his regularly scheduled care, and he also receives incontinence supplies through both the Medicaid Sate Plan and the HASCI waiver. Subsequent to his reduction in services, Levin never requested reconsideration of this determination, and his caregivers never took an appeal to SCDHHS challenging the reduction.

Plaintiffs' complaint lists six causes of action and seeks both declaratory and injunctive relief. Both parties have moved for summary judgment on all six causes of action, and the Court

---

[4] *See*, *Stogsdill v. South Carolina Dept. of Health and Human Services*, No. 2013-000762, 2014 WL 4437468 (S.C. App. Sept. 10, 2014).

heard oral argument on October 27, 2014. Because subject matter jurisdiction presents a threshold matter, the Court will address it fist.

### III.    SUBJECT MATTER JURISDICTION

Subject matter jurisdiction refers to a court's authority to hear a case and can be raised at any time, even *sua sponte* by the court.  *United States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007); *Plyler v. Moore,* 129 F.3d 728, 732 n. 6 (4th Cir. 1997).  Because Federal courts are courts of limited jurisdiction, "they possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  Parties cannot bestow federal courts with subject matter jurisdiction by consent. *See, e.g., Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982); *Roche v. Lincoln Prop. Co.,* 373 F.3d 610, 621 (4th Cir.2004), *rev'd on other grounds,* 546 U.S. 81 (2005); *City Nat. Bank v. Edmisten,* 681 F.2d 942, 945 n. 5 (4th Cir. 1982).  Accordingly, "a federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction."  Fed. R. Civ. P. 12(h)(3); *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999).

After review of the briefs submitted and the underlying state court proceedings, the Court concludes there are several impediments to exercising subject matter jurisdiction over the claims made by Stogsdill.

### A.  *Declaratory Judgment Act*

The Declaratory Judgment Act empowers federal district courts to hear declaratory judgment actions.  However, "the operation of the Declaratory Judgment Act is procedural only" in that, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. [T]he requirements of jurisdiction—the limited subject matters which

alone Congress had authorized the District Courts to adjudicate—were not impliedly repealed or modified." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950) (internal quotations marks and citations omitted).

Accordingly, "the exercise of jurisdiction under the Federal Declaratory Judgments Act is certainly not compulsory; it is discretionary." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 499 (1942). Federal courts have discretion in deciding whether to hear a declaratory action. *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992); *See also*, 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") (emphasis added). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (citing *Wilton v. Seven Falls, Co.*, 515 US 277 (1995)).

Other considerations are especially appropriate when a related state court proceeding is pending at the time the parties to federal litigation request declaratory relief from the district court. In such situations, the federal court should consider whether the controversy "can better be settled in the proceeding pending in the state court." *Brillhart,* 316 U.S. at 495 (1942). This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding . . ." *Id.*; *see also Mitcheson v. Harris,* 955 F.2d 235 (4th Cir.

1992). In light of these principles and other concerns related to federalism and comity, the Fourth Circuit has set forth specific factors for consideration by district courts in determining whether to invoke their discretionary prerogative to decline jurisdiction of claims seeking declaratory relief. These include:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law [; and (iv) ] whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achiev[e] a federal hearing in a case otherwise not removable.

*Centennial Life Ins.*, 88 F.3d at 257 (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 377 (4th Cir.1994)) (internal quotation marks omitted).

A review of these factors as it relates to the claims brought by Stogsdill is appropriate given the fact that a large majority of the claims asserted in this action are already pending before the state court for disposition. Specifically, Stogsdill has raised analogous claims in state court for violations of due process, the South Carolina Administrative Procedure Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. The documentation in the record demonstrates that the parties have fully presented all claims and defenses in the state court proceeding. Therefore, there are substantial overlapping issues of fact and law. Further, there is no indication that the state courts are not adequately conversant on the issues related to Stogsdill's claims. In fact, the recently issued opinion of the Court of Appeals, assuages any reservations about the state court's ability to fully adjudicate these issues. Further, because these claims implicate a state agency's administration of its own regulatory scheme and

review process, it is clear the state court has a vested interest in having these issues resolved in its jurisdiction.

As expressed to the parties during the hearing, this Court has great reservation about the appropriateness of its involvement with these issues, given the state court's adjudication, the possible appeal of that decision, and the ordered remand of some issues to SCDHHS. The potential for entanglement between the federal and state courts is great and may result in conflicting rulings, requiring protracted litigation and additional expense. Moreover, the Court is cognizant of the risk of duplicative efforts by competing courts resulting in waste of judicial resources. Accordingly, after thoughtful and careful consideration, the Court declines to issue a declaratory judgment ruling as to claims made by Stogsdill.

### B. *Rooker-Feldman Doctrine*

In addition to the discretionary authority vested in federal courts via the Declaratory Judgment Act, this Court may be mandatorily precluded from ruling on the state court claims presented by Stogsdill to the federal court under the *Rooker-Feldman* doctrine.[5] The *Rooker-Feldman* doctrine provides that "a United Sates District Court has no authority to review final judgments of a state court in judicial proceedings." *Brown & Root v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000). The prohibition on review extends to both decisions rendered by a state's highest court and those of lower courts. *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 199 (4th Cir. 1997). "Jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Id.* (citing, *Plyler v. Moore*, 129 F.3d 728, 731 (4thCir. 1997). Litigants are also barred from alleging constitutional violations via § 1983 in an attempt to defeat *Rooker-Feldman*. *Jordahl*, 122 F.3d at 202 ("cases

---

[5] *Rooker-Feldman* derives its name from two landmark United States Supreme Court cases from which the doctrine arose. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

make it clear that a litigant cannot circumvent *Rooker–Feldman* by recasting his or her lawsuit as a § 1983 action") (quoting *Bechtold v. City of Rosemount,* 104 F.3d 1062, 1065 (8th Cir.1997)).

"The controlling question in the *Rooker–Feldman* analysis is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision, not whether the state court judgment is presently subject to reversal or modification. Put another way, if in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual, *Rooker–Feldman* is implicated." *Jordahl*, 122 F.3d at 202. As the Fourth Circuit has explained,

> *Rooker-Feldman* bars not only direct review of issues actually decided by the state court, but also consideration of those claims which are inextricably intertwined with state court decisions. The inextricably intertwined prong of the doctrine bars a claim that was not actually decided by the state court but where success on the federal claim depends upon a determination that the state court wrongfully decided the issues before it. Under either the actually decided or the inextricably intertwined prong, the principal is the same: A party losing in state court is barred from seeking what in substance would be an appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.

*Brown & Root,* 211 F.3d at 198 (internal quotation marks and citations omitted).

The Supreme Court has since clarified the circumstances under which *Rooker-Feldman* is applicable, stating that the doctrine applies "only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) (citing *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)).

Here, Stogsdill's allegations in the Second Amended Complaint do not directly challenge the state court appellate decision; however, during oral argument counsel for Plaintiffs repeatedly reiterated the damages, both monetary and otherwise, endured by Stogsdill as a result

of SCDHHS' decision and the Order issued by the Court of Appeals.  Plaintiffs' counsel spoke about the errors in the Court of Appeals decision and the continued deprivation of services Stogsdill would endure due to the Court of Appeals' remand of issues to SCDHHS.

It is obvious to this Court that Stogsdill seeks a review of the state court decision, in that he has filed identical claims in federal court, which necessitates review of the state court disposition.  Stogsdill's remaining claims before this Court satisfy the "inextricably intertwined" prong of *Rooker-Feldman* because Stogsdill's success on the merits of the federal case requires this Court to rule that the state court made an erroneous decision.  Such a ruling is impermissible. *Penziol Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring in the judgment) ("Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment.").  Therefore, to the extent Stogsdill now seeks relief from the order issued by the South Carolina Court of Appeals, these claims are barred from consideration by this Court under *Rooker-Feldman*.

### C. Abstention

In the alternative, the Court may also divest itself of hearing this case based on abstention principles. Abstention refers to the judge-made doctrine that prohibits federal courts from rendering a judgment, despite the fact that justiciability and jurisdictional requirements are met. "The authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief."  *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 718 (1996).  The Supreme Court has held, "federal courts many decline to exercise their jurisdiction in otherwise exceptional circumstances where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by

considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Id*. at 716 (internal quotation marks and citations omitted). The application of abstention is not just limited to suits for injunctive relief, "but also require[s] federal courts to decline to exercise jurisdiction over certain classes of declaratory judgments, the granting of which is generally committed to the courts' discretion." *Id*. at 718 (internal quotation marks and citations omitted).

The court's authority to abstain is especially significant in equitable actions. "In cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court." *Id*. at 721.

   1. *Doe v. Kidd I and II*

Plaintiffs' counsel informed the court that abstention in this case would not be appropriate given the two opinions issued by the Fourth Circuit in the case of *Doe v. Kidd*. Specifically, counsel indicated the Fourth Circuit found that a parallel state court proceeding did not prohibit it from rendering a decision on Doe's claims. This Court disagrees with counsel's interpretation of these opinions.

In *Doe v. Kidd I*, Doe applied for services under the South Carolina Department of Disabilities and Special Needs' ("SCDDSN") waiver program in July 2002, after previous requests for services had been denied in 2000 and 2001. *Doe v. Kidd I*, 501 F.3d 348, 352 (2007). In December of 2002, without making a determination as to Doe's eligibility for the waiver program, SCDDSN placed Doe on the non-critical waiting list for the program. *Id*. Doe appealed this decision and while the appeal was pending SCDDSN moved her to the top of the

11

critical waiting list. *Id*. SCDDSN then moved to dismiss Doe's appeal. *Id*. At the hearing on SCDDSN's motion to dismiss in March 2003, Doe conceded she had been moved to the top of the list, and she had been found eligible for services under the waiver program earlier that month. *Id*. As such, the appeal was dismissed. *Id*. Doe did not appeal the dismissal to the Administrative Law Judge Division. *Id*. However, at the end of March 2003, Doe learned she had been terminated from the waiver program. *Id*. During May and June of 2003, Doe requested another hearing on the grounds that she had not received the services promised by SCDDSN in her plan of care. *Id*. The hearing officer held Doe's request for an appeal in abeyance because he considered Doe's Medicaid eligibility to be in question. *Id*.

On June 9, 2003, Doe filed suit in federal court alleging violations of the Medicaid Act, Americans with Disabilities Act and other various state laws. *Id*. The defendants moved for summary judgment on Doe's claims. *Id*. at 353. In December of 2004, the district court dismissed as moot, three of Doe's causes of action on the grounds that during the hearing on the motion for summary judgment, Doe admitted that she had already received the relief requested in those counts. *Id*. Doe appealed two of those dismissals to the Fourth Circuit, specifically, her § 1983 claims for violation of the Medicaid Act's reasonable promptness requirement and freedom of choice provision. In September 2007, the Fourth Circuit affirmed the dismissal of Doe's freedom of choice claim, vacated the district court's grant of summary judgment to defendants on Doe's reasonable promptness claim, and remanded the case back to district court for further proceedings. *Id*. at 360.

In February 2005, during the pendency of Doe's appeal before the Fourth Circuit, SCDDSN reevaluated Doe's Medicaid services and determined that Doe was no longer mentally retarded, and therefore, ineligible for the waiver program. *Doe v Kidd, II*, 419 Fed.Appx. 411,

414 (2011). Doe sought administrative appeal within the department, but the SCDDSN hearing officer agreed with the determination. *Id*. at 415. Doe appealed that decision to the Administrative Law Judge who affirmed the decision. *Id*. Doe then appealed to the South Carolina Court of Appeals. *Id*. At the time the Fourth Circuit decided *Doe v Kidd, II* the appeal was still pending before the South Carolina Court of Appeals. *Id*.

In February 2008, after the case was remanded back to district court via the decision in *Doe v. Kidd, I*, only Doe's reasonable promptness claim was before the court. *Id*. At that time, Doe sought to amend her complaint to add three causes of action based on the Supremacy Clause of the Constitution and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Id*. These causes of action were identical to those alleged in Doe's state court action. *Id*. The district court denied Doe's motion to amend. *Id*. In rendering its decision, the district court commented on Doe's attempt to raise her related state administrative appeal claims, stating, "challenge to DDSN's level of care and placement decisions must be made through the administrative procedures available to her in state court." *Id*. On remand, the district court, again, granted defendants' motion for summary judgment. *Id*. at 413. Doe appealed for the second time to the Fourth Circuit, seeking review of (1) the dismissal of her reasonable promptness claim; (2) the denial of her motion to amend the complaint; and (3) the denial of her request for attorney's fees. *Id*. The Fourth Circuit reversed the district court's decision to dismiss Doe's reasonable promptness claim and deny Doe attorney's fees.

Importantly, the Fourth Circuit affirmed the district court's decision to deny Doe's request to amend her complaint. The Court noted that such an amendment would have been used to attempt to "collaterally attack the now pending state administrative proceedings as to her Medicaid eligibility." *Id*. at 420. In further support of the district court's decision, the Fourth

Circuit cited to Rooker-Feldman and pointed out the doctrine "is particularly important where the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a plaintiff's request for relief." *Id*.  As such, any judgment by the federal district court would have also encompassed a review of the "propriety of the judicial rulings of the hearing officer, South Carolina administrative law judge, and any subsequent state appellate courts" because Doe was seeking to "collaterally attack the[] state court judicial proceedings by asking the federal courts to again review the evidence and to then overturn the[] state court judgments."  *Id*. at 421.

The issue pending before the South Carolina courts in *Doe* specifically dealt with SCDDSN's determination of Doe's mental retardation status; however, the sole issue before the federal district court was Doe's reasonable promptness claim under her 2003 plan of care.  The district court and Fourth Circuit clearly saw these as distinct issues, especially in light of the fact that Doe was not permitted to amend her complaint and raise the state court issues before the federal courts.

The analysis contained in these opinions exhibits the federal courts' paramount concern for respecting comity and the ability of the state court to render a judgment, even on issues pertaining to federal law.  The two proceedings in state and federal court were not parallel, and the federal courts denied any mechanism by Doe to make them such, by disallowing Doe to make claims in federal court identical to those she had already brought in state court.  Based on the procedural history of *Doe v. Kidd I* and *II*, as well as the rulings made by the Fourth Circuit, there does not appear to be any bar to this Court invoking abstention in the present case.

2.  *Colorado River Abstention*

*Colorado River*[6] abstention allows a court to refrain from hearing a federal case that mirrors an ongoing state court case.  The purpose of *Colorado River* abstention is to "conserve judicial resources and otherwise avoid duplicative litigation when litigants seek to adjudicate the same dispute in both state and federal forums." *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 253 (4th Cir. 1993).

In analyzing whether the court should abstain under *Colorado River*, "the district court must first determine whether the state and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id*. at 254 (citing *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991)).   Despite the fact that actions may appear to be identical they may not be parallel if they "raise different issues or seek different remedies." *Flanders Filters, Inc. v. Intel Corp.*, 93 F.Supp. 2d 669, 672 (E.D.N.C. 2000).

In the proceeding before the South Carolina state court, Stogsdill raised claims related to the lawfulness of the reduction in waiver services, including whether the waiver caps were lawful despite absent SCDHHS regulations enacting the cap.  Stogsdill also alleged violations of his due process rights via inadequate notice of reduction in his services, as well as the determination made regarding his risk of institutionalization as it relates to violations of the Americans with Disabilities Act as set forth in *Olmstead*.[7]  Additionally, Stogsdill challenged SCDHHS' proof that accommodating his needed services would force the state to fundamentally

---

[6] *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).
[7] *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581, 607 (1999) (holding "under Title VII of the ADA, States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities.").

alter the nature of its program.   In the state court proceedings, Stogsdill was essentially requesting equitable relief, i.e. the services that he believed he was entitled to, as well as a declaration that SCDHHS had violated the law.   Stogsdill further sought injunctive relief in his request, namely, that SCDHHS be required to send proper notice to all individuals of their reduced services to safeguard their due process rights.

In the case before this Court, Stogsdill has brought the exact same claims as those brought in his state court action.[8]   The relief sought is analogous as well.   Stogsdill has requested both declaratory and injunctive relief from this Court.[9]

"If parallel suits exist, the district court must then carefully balance several factors, with the balance heavily weighted in favor of the exercise of jurisdiction.   The factors relevant to the inquiry include the relative inconvenience of the federal forum, the relative order of the two suits, the source of law in the case, and the relative progress of the two proceedings." *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 248 (4th Cir. 2013) *(quoting Al–Abood v. El–Shamari,* 217 F.3d 225, 232 (4th Cir. 2000)).   The federal court may also need to weigh the avoidance of piecemeal litigation and the state court's ability to protect a party's rights.   *Flanders Filters, Inc.*, at 672.

### i.    Inconvenience of the Federal Forum

There are no facts before the Court that indicate the federal forum would be inconvenient for the parties.   The state court proceedings are all occurring in the South Carolina state courts,

---

[8] Stogsdill has brought the following causes of action in the instant suit: (1) violation of statutory and constitutional due process, (2) violation of the S.C. Administrative Procedure Act, (3) violation of the American's with Disabilities Act, (4) violation of Section 504 of the Rehabilitation Act, (5) violation of the Medicaid Act, and (6) violation of 42 U.S.C. §§ 1983 and 1988 (Civil Rights).

[9] Stogsdill's Complaint is entitled, "Second Amended Complaint for Injunctive Relief." (ECF No. 72).

which does not create any hardship in the federal forum for the witnesses or the parties. Accordingly, this factor counsels against abstention.

     *ii.*     *Relative Order of the Two Suits and Progress of Two Proceedings*

As stated previously, Stogsdill filed the instant case in federal court while his appeal before the South Carolina Administrative Law Court was pending. Stogsdill's proceedings before the state agency began in 2009, and this suit was filed in federal court in 2012. Since that time, Stogsdill's state court case has been heard by both the Administrative Law Court and the South Carolina Court of Appeals. Currently, the case in state court has been partially affirmed and partially remanded back to SCDHHS for additional proceedings. Further, the parties have indicated to this Court that they may seek an additional appellate review by the South Carolina Supreme Court. The case before this Court has yet to have any substantive rulings on the merits.[10] The parties requested multiple extensions of time for completion of discovery and for the filing of responses to the now pending motions for summary judgment. Accordingly, despite the advanced age of this case, the Court has had little involvement in this case, other than granting numerous extension requests. Given the substantial progress made in the state court case, most notably rulings on the merits of the claims brought by Stogsdill in that action, these factors weigh in favor of abstention.

     *iii.*     *Piecemeal Litigation, and Protection of Parties' Rights*

The fact that analogous lawsuits are being conducted in both state and federal court creates a burden on not only the parties, but the judiciary. There exists great potential for litigation that resolves certain claims and aspects of the litigation in competing forums.

---

[10] While this case was pending before The Honorable Timothy M. Cain, several defendants were dismissed from the case via a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. While those defendants also moved for dismissal pursuant to Rule 12(b)(6) for failure to state a claim, the Court did not address the merits of that argument, finding that dismissal was appropriate due to lack of subject matter jurisdiction. (ECF No. 42).

However, "piecemeal litigation alone does not weigh heavily in favor of abstention." *Flanders Filters, Inc.*, at 673. Therefore, the protection of the parties' rights must be evaluated. There is no dispute that the judgments already rendered, as well as any judgments to be rendered by the state court, are enforceable against the defendants. Additionally, the parties have not been precluded from raising any of their claims or defenses. These facts demonstrate the parties' rights are sufficiently protected because "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Id.* Accordingly, these factors weigh in favor of abstaining.

Based on the foregoing evaluation of the relevant factors and the current posture of the state and federal cases, the Court concludes *Colorado River* abstention as to Stogsdill's claims is appropriate in this case.

### 3. *Burford Abstention*

*Burford* [11] abstention is applicable in instances where the federal court is sitting in equity and the court declines to hear the case to avoid interference with the proceedings or orders of state administrative agencies where timely and adequate state court review is available to the parties. Like all other abstention doctrines, the invocation of *Burford* abstention by the federal court is discretionary and must "reflect principles of federalism and comity." *Quackenbush v. Allstate Ins.*, 517 U.S. at 728 (quoting *Growe v. Emison*, 507 U.S. 25, 32 (1993)).

Accordingly, abstention under *Burford* is appropriate: "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of public concern." *New Orleans Pub. Serv.*, 491 U.S. 350, 361

---

[11] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

(1989) (citing *Colorado River*, 424 U.S. at 814).  Specifically, *Burford* abstention may be warranted "when deference is due to a state because claims in an action implicate issues concerning a specialized and important state regulatory scheme." *Elite Medical Supply of New York, LLC*, at *4; *See also*, *Stephens v. Cooper*, 746 F.Supp 292 (E.D.N.Y. 1990).

Here, the South Carolina Department of Health and Human Services is the sole agency responsible for the administration of the state's Medicaid program.  S.C. Code. Ann. § 44-6-30. While the funds used to administer the Medicaid program are provided by the Federal government, "Congress has afforded States broad flexibility in tailoring the scope and coverage of their Medicaid programs." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 686 (2003) (citing *Alexander v. Choate*, 469 U.S. 287, 303 (1985)).  South Carolina has promulgated an extensive regulatory scheme for the administration of its Medicaid program. *See* S.C. Code Ann. Regs. 126-125 *et seq*.

Accordingly, the South Carolina courts have noted the deferential standard employed in the review of SCDHHS' decisions given the agency's extensive specialized knowledge of its own regulations.  "[B]ecause the [SCDHHS] Commission has been designated as the single state agency for implementation of Medicaid, great deference must be accorded interpretations by the agency of Medicaid laws and regulations." *Hampton Nursing Ctr. v. State Health & Human Servs. Fin. Comm'n*, 303 S.C. 143, 147, 399 S.E.2d 434, 436 (Ct. App. 1990); *S.C. Police Officers Retirement Sys. v. City of Spartanburg,* 301 S.C. 188, 391 S.E.2d 239 (1990); *Doe v. S. Carolina Dep't of Health & Human Servs.*, 398 S.C. 62, 80, 727 S.E.2d 605, 614 (2011); *Byerly Hosp. v. South Carolina State Health and Human Servs. Fin. Comm'n,* 319 S.C. 225, 460 S.E.2d 383 (1995) (great deference is given to an agency's interpretation of regulations where it has particular expertise).

19

Moreover, the State has developed its own administrative review process and appellate procedure.  S.C. Code Ann. Regs. 126-152.  Such schemes were envisioned by Congress when the Medicaid Act was enacted.

> [T]he Medicaid Act actually mandates that the participating states create a voluntary administrative process whereby beneficiaries may seek redress for an allegedly wrongful withholding of benefits . . . This mandate is evidence that Congress anticipated that the states would provide the remedy for vindication of the guidelines and waiver provisions of the Medicaid Act. In other words, there is a remedy available to plaintiffs for the wrong they allege in a state-created forum, rather than in federal court.

*Wogan v. Kunze*, 366 S.C. 583, 595, 623 S.E.2d 107, 114 (Ct. App. 2005) *aff'd as modified*, 379 S.C. 581, 666 S.E.2d 901 (2008) (citing *Solter v. Health Partners of Philadelphia, Inc.,* 215 F.Supp.2d 533 (E.D.Pa. 2002)).

Sogsdill seeks equitable relief as it relates to a state regulatory scheme and the state's implementation of its Medicaid program. Given the state interests involved, this Court concludes that interference in this matter is unwarranted.  *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 719 (4th Cir. 1999) ("Basic abstention doctrine requires federal courts to avoid interference with a state's administration of its own affairs.") (citing *Meredith v. Talbot County,* 828 F.2d 228, 231 (4th Cir.1987)).  As such, the Court concludes Burford abstention is another ground for declining jurisdiction of Stogsdill's claims in this case.

Because the Court has elected to refrain from rendering any decision as to Stogsdill based on the reasons previously articulated, the Court will now analyze the claims brought by Levin.

## IV.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact

is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.  If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323.  All inferences must be viewed in a light most favorable to the non-moving party, but he "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## V.    DISCUSSION

Plaintiff Levin alleges six causes of action against the defendants and seeks both declaratory and injunctive relief in his complaint.  Both parties have moved for summary judgment.

### A.  Claims Against Defendant Keck in his Official Capacity

As an initial matter, the Court will address the claims made against defendant Anthony Keck ("Keck"), Director of SCDHHS.  In support of summary judgment, Keck argues all claims against him in his official capacity should be dismissed because the causes of action are duplicative, as they have also been asserted against the agency, SCDHHS.

Levin maintains that in order to prevail in a § 1983 case, he must name the government official as a defendant. Levin asserts he has properly sued Keck in his official capacity as

21

director of SCDHHS and that Defendants are only attempting to defeat a legitimate § 1983 claim.

Pursuant to 42 U.S.C. § 1983, individuals may bring suit for deprivation of their civil rights against persons acting under color of state law. Litigants can file claims under § 1983 via individual-capacity suits, that seek to impose individual liability upon a government official, or official-capacity suits that seek redress from the governmental agency itself. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978)). Therefore, suits against the state officials in their official capacity are suits against the state. *Hafer* at 25; *Will v Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("Although state officials literally are persons, an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself."). "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *See also*, *Layman ex rel. Layman v. Alexander*, 343 F.Supp.2d 483, 488 (W.D.N.C. 2004); *Ramsey v Schauble*, 141 F.Supp.2d 584, 591 (W.D.N.C. 2001).

The Court agrees with the defendants. The claims against both Keck and SCDHHS are duplicative because any judgment rendered against Keck in his official capacity as director of SCDHHS would be tantamount to a judgment against SCDHHS itself. Therefore, as stated on the record during the hearing, the Court dismisses all causes of action against Defendant Keck in his official capacity.

### B.  Violations of the Medicaid Act

In his Second Amended Complaint, Levin's fifth cause of action alleges violations of the Medicaid Act.[12]  In support of his motion for summary judgment, Levin's arguments are largely duplicative of the arguments made related to the Administrative Procedure Act.  *Infra*.  Levin claims SCDHHS failed to establish and apply reasonable standards and procedures in the operation of the Medicaid program, and has refused to promulgate regulations for the administration of the Medicaid waiver programs.

SCDHHS responds to these arguments by stating that the Medicaid Act does not allow for a private cause of action under the Act itself.  Accordingly, SCDHHS argues the only proper way for seeking enforcement of a provision of the Medicaid Act by a private citizen against the state is through § 1983, and because Levin has set forth an independent cause of action against SCDHHS for alleged violations of § 1983, the cause of action under the Medicaid act fails as a matter of law.  Further, SCDHHS argues it is entitled to sovereign immunity as to any allegations or purported violations of the Medicaid Act.

The Medicaid Act was enacted by Congress via its spending power, so "the general remedy for state noncompliance is not a private right of action but an action by the federal government to terminate the funds provided to the state." *M.A.C. v. Betit*, 284 F.Supp.2d 1298, 1305 (D. Utah 2003).  However, in *Wilder v. Virginia Hospital*, the Supreme Court recognized that a Medicaid amendment at issue created "a right enforceable in a private cause of action pursuant to § 1983." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 523 (1990). Similarly, the Fourth Circuit Court of Appeals "found that another provision of the Medicaid Act, dealing with the Medicaid waiver program created by 42 U.S.C. § 1396n(c), conferred a private right of

---

[12] Stogsdill has made identical claims for violations of the Medicaid Act.  To the extent this issue has not been decided by the state court and/or abstention is not appropriate, this ruling also applies to Stogsdill's claims.

action enforceable under § 1983." *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 210 (4th Cir. 2007) (citing *Doe v. Kidd,* 501 F.3d 348 (4th Cir. 2007)).

To be enforceable by private right of action, a statute must "confer rights on a particular class of persons." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002) (quoting *California v. Sierra Club,* 451 U.S. 287, 294 (1981)). "Where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit. . . " *McCartney ex rel. McCartney v. Cansler*, 608 F.Supp.2d 694, 698 (E.D.N.C. 2009) *aff'd sub nom. D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334 (4th Cir. 2010) (citing *Gonzaga,* 536 U.S. at 286)). Congress has not, statutorily, provided any private federal right of action or remedy under the Medicaid Acts. *See* 42 U.S.C. §§ 1395, 1396; *See also, Stewart v. Bernstein,* 769 F.2d 1088, 1093 (5th Cir. 1985) (Congress did not intend to provide a private right of action under the Medicare or Medicaid Acts[.]); *Estate of Ayers ex el. Strugnell v. Beaver,* 48 F.Supp.2d 1335, 1339-40 (M.D.Fla. 1999).

The Court finds Levin's cause of action for any violations of the Medicaid Act are only properly brought pursuant to § 1983. Therefore, the Court grants SCDHHS summary judgment on the fifth cause of action for violation of the Medicaid Act.

### C. *Violation of Statutory and Constitutional Due Process*

Levin argues he is entitled to summary judgment on his first cause of action alleging violation of statutory and constitutional Due Process because the written notices provided by SCDHHS regarding a reduction in services failed to comply with the requirements of Due

Process.  Part of this process includes the right to meaningful notice prior to the termination or reduction and a fair and impartial pre-termination hearing.[13]

Conversely, SCDHHS argues summary judgment in its favor is appropriate for two reasons.  First, Levin has not alleged facts that give rise to a due process claim because Levin has failed to allege that any services were reduced or terminated or that he was not provided with notice or the right to appeal the reduction or termination.  Second, any claims as to defective hearing notices are moot.  Evidence before the court shows that while there were deficiencies with the notices at one time, as acknowledged by SCDHHS, the notices now contain the required information and there is no evidence that the notices being sent now are not in compliance with federal regulations.

Levin's only claim as to violation of his Due Process rights states, "Since January 1, 2010, [Levin's] services have been further reduced and reimbursement rates to his providers and physicians have been systematically reduced and these reductions in services and rates are likely to continue, yet Plaintiffs have been denied the opportunity for review because the state administrative system is futile and costs more than it would cost to buy the services, supplies, and equipment being appealed." (ECF 72, p. 27, ¶ 143).  Levin never requested reconsideration of the reduction in services, nor did he appeal any reduction in services to SCDHHS, the proper agency to hear such requests. S.C. Code Ann. Regs. 126-152(B).  There does not appear to be any evidence of alleged due process violations as to Levin.  Levin's own failure to appeal the determination of a reduction in services because he deems the system to be "futile" does not give rise to a violation of his due process rights at the hands of the defendants.  Therefore, the Court

---

[13] The complaint also alleges SCDHHS did not act with reasonable promptness in rendering a final state agency determination by failing to adhere to the requirement that such decisions be made within ninety (90) days. However, this allegation is only applicable to Stogsdill because Levin never requested state agency review.

grants SCDHHS' motion for summary judgment as to the first cause of action alleged by Levin for violation of statutory and constitutional due process.

### D.  Violation of South Carolina Administrative Procedure Act

Levin contends he is entitled to summary judgment on his second cause of action because SCDHHS has violated the South Carolina Administrative Procedure Act.  Levin maintains these violations are a result of the SCDHHS' failure to establish and apply reasonable standards and procedures in the operation of the Medicaid program and its refusal to promulgate regulations for the administration of Medicaid waiver programs.  Levin additionally argues, the 2010 caps on services were arbitrarily established and service coordinators have been instructed to determine medical necessity and override physicians' orders, in contravention with the South Carolina Medical Practice Act, which requires that such decisions related to medical treatment be made by physicians.  Levin contends that because SCDHHS treated the 2010 caps as a binding norm for all recipients, regardless of need, it was required to promulgate regulations under the Administrative Procedure Act.

In rebuttal, SCDHHS asserts the issue is whether it *must* promulgate regulations in order to enforce the provisions in the waiver.  SCDHHS stresses "the federal government has made it clear that states have wide discretion in designing a waiver program that is tailored to the needs of the particular state." *Doe v. S. Carolina Dep't of Health & Human Servs.*, 398 S.C. 62, 71, 727 S.E.2d 605, 610 (2011).  The *Doe* court went on to rule that denial of services was improper where the requirement had neither been contained in the waiver nor promulgated by regulation. *Id*. at 73, 727 S.E.2d at 611.   Here, the 2010 reductions were specifically contained in the approved waiver application, so SCDHHS maintains it was not required to promulgate regulations to enforce the waiver provisions.

26

The Court notes that this issue has already been analyzed and ruled upon by the South Carolina Court of Appeals in the pending state court case involving Plaintiff Stogsdill.  *See Stogsdill v. South Carolina Dept. of Health and Human Services*, No. 2013-000762, 2014 WL 4437468 (S.C. Ct. App. Sept. 10, 2014).  While the opinion issued by the Court of Appeals is not binding on this Court, its analysis is persuasive.  This Court adopts the reasoning of the South Carolina Court of Appeals and finds that SCDHHS was not required to promulgate a regulation in order to enact the cap as an enforceable provision.  Therefore, SCDHHS is granted summary judgment as to the second cause of action for violation of the SC Administrative Procedure Act.

**IV.    CONCLUSION**

Based on the record before the Court, the briefs filed by the parties, and the arguments of counsel, the Court hereby **DENIES** in part Plaintiffs' Motion for Summary Judgment and **GRANTS** in part defendants' motions for summary judgment.   The parties are further instructed to provide the Court with additional briefing as the claims still remaining to be tried before a jury related to plaintiff Levin within fourteen (14) days of this Order.  Such briefs shall not exceed twenty (20) pages.

IT IS SO ORDERED.

November 10, 2014                                  Joseph F. Anderson, Jr.
Columbia, South Carolina                           United States District Judge

27